EXHIBIT 1

1  Andrew G. Gunem (SBN 354042)
2  agunem@straussborrelli.com
   **STRAUSS BORRELLI PLLC**
3  980 N. Michigan Avenue, Suite 1610
   Chicago, IL 60611
4  Telephone: (872) 263-1100
   Facsimile: (872) 263-1109
5
6  *Attorneys for Plaintiff and Proposed Class*

Electronically FILED by
Superior Court of California,
County of Los Angeles
3/12/2025 12:28 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By M. Aguirre, Deputy Clerk

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA
                       COUNTY OF LOS ANGELES
9

10  JANE DOE, on behalf of herself and all      Case No. 25STCV07155
    others similarly situated,
11                                              **CLASS ACTION COMPLAINT**
                         Plaintiff,             **FOR DAMAGES, INJUNCTIVE**
12                                              **RELIEF, AND EQUITABLE RELIEF**
    v.                                          **FOR:**
13                                                1. **NEGLIGENCE;**
    JAMES S. SCHWARTZ MD PC,                      2. **NEGLIGENCE** *PER SE*;
14                                                3. **BREACH OF IMPLIED**
                         Defendant                   **CONTRACT**
15                                                4. **BREACH OF THE IMPLIED**
                                                     **COVENANT OF GOOD FAITH**
16                                                   **AND FAIR DEALING**
                                                  5. **UNJUST ENRICHMENT**
17                                                6. **INVASION OF PRIVACY**
                                                  7. **VIOLATION OF**
18                                                   **CALIFORNIA'S UNFAIR**
                                                     **COMPETITION LAW**
19                                                8. **VIOLATION OF THE**
                                                     **CALIFORNIA CONSUMER**
20                                                   **PRIVACY ACT**
                                                  9. **VIOLATION OF THE**
21                                                   **CALIFORNIA CUSTOMER**
                                                     **RECORDS ACT**
22                                               10. **VIOLATION OF THE**
                                                     **CALIFORNIA**
23                                                   **CONFIDENTIALITY OF**
                                                     **MEDICAL INFORMATION ACT**
24
25                                              **DEMAND FOR JURY TRIAL**
26
27
28
                       CLASS ACTION COMPLAINT – 1

Plaintiff, Jane Doe ("Plaintiff"), on behalf of herself and all others similarly situated, states as follows for her class action complaint against Defendant, James S. Schwartz MD PC ("Schwartz MD" or "Defendant"):

## INTRODUCTION

1.      This Class Action arises from a recent cyberattack resulting in a data breach of sensitive information in the possession and custody and/or control of Defendant (the "Data Breach").

2.      On information and belief, the Data Breach was discovered by Defendant on June 27, 2024. Following an internal investigation, Defendant learned the Data Breach resulted in unauthorized disclosure, exfiltration, and theft of current and former patients' and prospective patients' highly personal information, including first name, last name, address, date of birth ("personally identifying information" or "PII"), medical information, prescription medications, patient images, and health insurance information ("protected health information" or "PHI"). Plaintiff refers to both PII and PHI collectively as "Sensitive Information."

3.      On or around January 15, 2025–seven months after the Sensitive Information from the Data Breach was said to be posted on the dark web– Schwartz MD finally began notifying Class Members about the Data Breach ("Breach Notice"). The Breach Notice is attached as Exhibit A.

4.      Due to intentionally obfuscating language, it is unclear when the Breach actually took place and how long cybercriminals had unfettered access to Plaintiff's and the Class's most sensitive information.

5.      Schwartz MD took at least seven months before informing Class Members even though Plaintiff and thousands of Class Members had their most sensitive personal information accessed, exfiltrated, and stolen, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

6.      Schwartz MD's Breach Notice obfuscated the nature of the breach and the threat it posted—refusing to tell its patients when the Breach occurred, how many people were impacted, how the breach happened, and why it took Defendant until January 2025 to begin notifying victims that hackers had gained access to highly private Sensitive Information.

7.      Defendant's failure to timely detect and report the Data Breach made its patients vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Sensitive Information.

8.      Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII and PHI misuse.

9.      In failing to adequately protect Plaintiff's and the Class's Sensitive Information, failing to adequately notify them about the breach, and by obfuscating the nature of the breach, Defendant violated state and federal law and harmed an unknown number of its current and former patients and prospective patients.

10.     Plaintiff and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their Sensitive Information. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

11.     Plaintiff was a prospective patient and Data Breach victim.

12.     Accordingly, Plaintiff, on behalf of herself and a class of similarly situated individuals, brings this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendant's possession.

## PARTIES

13.     Plaintiff, Jane Doe a natural person and citizen of Phoenix, Arizona, where she intends to remain. Plaintiff received Schwartz MD Breach notice stating that her Sensitive Information was compromised in the Data Breach.

14.     Defendant, James S. Schwartz MD PC, is a California corporation, with its principal place of business at 240 S La Cienega Boulevard Suite 200 Beverly Hills, CA 90211.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action under Cal. Code Civ. Proc. § 410.10. And the amount in controversy exceeds the jurisdictional minimum of this Court.

16.     This Court has personal jurisdiction over Defendant because it is headquartered in California, regularly conducts business in California, and has sufficient minimum contacts in California.

17.     Venue is proper in this Court because Defendant's principal office is in this County, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this County.

## STATEMENT OF FACTS

*Schwartz MD*

18.     Schwartz MD is a Beverly Hills, California plastic surgery company that boasts substantial accolades as a world-renowned plastic surgeon."[1] Defendant boasts a total annual revenue between $10 and $25 million.[2]

19.     As part of its business, Schwartz MD receives and maintains the Sensitive Information of thousands of current and former patients and prospective patients. In doing so, Schwartz MD implicitly promises to safeguard their Sensitive Information.

---

[1] Dr. Jaime Schwartz, Accolades, https://www.drjaimeschwartz.com/accolades/ (last visited March 12, 2025).
[2] Salary.com, Dr. Jaime Schwartz, https://www.salary.com/research/company/jaime-schwartz-md-facs-overview (last visited March 12, 2025).

20.     In collecting and maintaining its current and former patients' and prospective patients' Sensitive Information, Schwartz MD agreed it would safeguard the data in accordance with state law, and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their Sensitive Information

21.     Indeed, Defendant promises that "As our patient, we want you to know that we respect the privacy of your personal medical information and will do all we can to secure and protect your privacy. We strive to always take reasonable precautions to protect your privacy."[3]

22.     Despite recognizing its duty to do so, on information and belief, Schwartz MD has not implemented reasonable cybersecurity safeguards or policies to protect its patients' Sensitive Information or supervised its IT or data security agents and employees to prevent, detect, and stop breaches of its systems. As a result, Schwartz MD leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to patients' Sensitive Information.

***The Data Breach***

23.     Plaintiff was a prospective Schwartz MD patient whose Sensitive information was transferred to Schwartz MD after her treating doctor left her practice.

24.     On information and belief, Defendant collects and maintains patients' and prospective patients' Sensitive Information in its computer systems.

25.     In collecting and maintaining Sensitive Information, Defendant implicitly agrees that it will safeguard the data using reasonable means according to state and federal law.

26.     According to its Breach Notice, on June 27, 2024, Defendant was alerted that "an unauthorized third party utilized a third-party vendor's credentials to access the practice's medical billing and practice management system." Ex. A. Following an internal investigation, Defendant confirmed that "data was acquired without authorization" by the unauthorized actor. *Id.*

27.     In other words, Defendant's cyber and data security systems were so completely inadequate that it not only allowed cybercriminals to obtain files containing a treasure trove of

---

[3] Privacy Policy https://www.drjaimeschwartz.com/client-resources/ (last visited March 12, 2025).

thousands of its patients' highly private Sensitive Information, but it did not detect the Data Breach until the cybercriminals began posting or began threatening to post this Sensitive Information on the dark web.

28.    Through its inadequate security practices, Defendant exposed Plaintiff's and the Class's Sensitive Information for theft and sale on the dark web.

29.    Indeed, this was the second data breach Defendant experienced within six months, with the first occurring in October 2023.  Upon information and belief, the notorious ransomware gang, 'Hunters International ransomware group' was responsible for both cyberattacks. Known as one of the most notorious and active ransomware actors, Hunters has perpetrated multiple high-profile breaches in the last year alone.[4] Defendant knew or should have known of the tactics employed by cybercriminals like Hunters International.

30.    With the Sensitive Information secured and stolen by Hunters International ransomware group during this October 2023 first breach, the hackers purportedly issued a ransom demand to Defendant. Though Defendant provided no public information on the ransom demand or payment, it is believed Defendant refused to pay the demand. As a result, Hunters began releasing portions of the 1.1 terabyte of files for download on the dark web, including, appallingly at least four patient photos, including one nude photo with the patient's face visible.

---

[4] Quorum Cyber, https://www.quorumcyber.com/malware-reports/hunters-international-ransomware-report/ (last visited October 19, 2024).

31.     On November 11, 2023, the hacker group updated their dark web posting by listing patient data and included the following note to Dr. Schwartz:

> **Seems like you don't want to protect your data at all. More than 30 days had passed already since your network has been breached. You have been provided with everything you have asked about: sample of files, decryption tool demonstration, filetree, personal details. But you keep begging for proofs. This is not the way we going to make business with you. Maybe you will do us a favor and transfer half of the money to prove that you can pay for your data? That would be fair, we guess. Nevertheless, we will start deploying a little piece of your data everyweek, until all of your data will be shared this way. Starting today. You still have an option to pay for your data, until sharing is finished.**

32.     Appallingly, upon information and belief, Schwartz MD never notified its patients or the California Attorney General of this October 2023 data breach.

33.     Instead, upon information and belief, when a small number of patients contacted Dr. Schwartz after the October 2023 was reported online, Defendant attempted to minimize the data breach by falsely claiming that it affected only a small number of patients and that other patients' records were secure.

34.     Upon information and belief, despite this October 2023, Defendant continued to fail to implement reasonable cybersecurity, leading ultimately to the second Data Breach discovered on June 27, 2024 that is subject to this litigation.

35.     While it is unclear due to Defendants intentionally obfuscating language, when this second Data Breach took place, upon information and belief, the cybercriminals began posting information relating to the Breach as early as April 2024.



36.     On or around January 15, 2025—seven months after the Breach was discovered—Schwartz MD finally began notifying Class Members about the Data Breach. However, notification is ongoing with many Class Members, including Plaintiff still awaiting formal notice.

37.     Despite its duties and alleged commitments to safeguard Sensitive Information, Defendant did not in fact follow industry standard practices in securing patients' Sensitive Information, as evidenced by the Data Breach.

38.     In response to the Data Breach, Defendant contends that is "looking into enhancements to prevent a similar incident." Ex. A. Though Defendant fails to expand on what these additional enhancements measures are, such measures should have been in place before the Data Breach.

39.     Through its Breach Notice, Defendant also recognized the actual imminent harm and injury that flowed from the Data Breach, so it encouraged breach victims to be "remain vigilant and monitor your accounts for suspicious or unusual activity." Ex. A.

40.     Defendant also recognized through its Breach Notice, its duty to implement safeguards in accordance with state law, and federal law, insisting that, despite the Breach showing otherwise, "[p]lease be assured that we take the privacy and security of all personal information within its possession very seriously" and that "Data security is among our highest priorities, and we are committed to doing everything we can to protect the privacy and security of the personal information in our care," Ex. A.

41.     Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's Sensitive Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

42.     On information and belief, Schwartz MD has offered several months of complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves Sensitive Information that cannot be changed, such as Social Security numbers.

43.     Even with several months' worth of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' Sensitive Information is still

CLASS ACTION COMPLAINT – 9

substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

44.     On information and belief, Defendant failed to adequately train and supervise its IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its patients' Sensitive Information. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Sensitive Information.

***The Data Breach was a Foreseeable Risk of which Defendant was on Notice.***

45.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare and healthcare adjacent industry preceding the date of the breach.

46.     In light of recent high profile data breaches at other healthcare and healthcare adjacent companies, Defendant knew or should have known that its electronic records and patients' Sensitive Information would be targeted by cybercriminals.

47.     In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[5] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[6]

48.     Indeed, cyberattacks against the healthcare industry have become increasingly common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the

---

[5] 2021 Data Breach Annual Report, ITRC, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.wsav.com/wp-content/uploads/sites/75/2022/01/20220124_ITRC-2021-Data-Breach-Report.pdf (last visited January 10, 2024).
[6] *Id.*

CLASS ACTION COMPLAINT – 10

increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime." [7]

49.    Cyberattacks on medical systems and healthcare and healthcare adjacent companies like Defendant have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive. . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[8]

50.    In fact, many high-profile ransomware attacks have occurred in healthcare and healthcare adjacent companies, with an estimated that nearly half of all ransomware attacks being carried out are on healthcare companies, and with 85% of those attacks being ransomware similar to the one occurring here.[9]

51.    Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

***Plaintiff's Experience***

52.    Plaintiff was a Schwartz MD prospective patient and Data Breach victim.

53.    Plaintiff or her third party agents provided her Sensitive Information to Defendant and trusted that it would use reasonable measures to protect it according to state and federal law.

54.    Defendant deprived Plaintiff of the earliest opportunity to guard herself against the Data Breach's effects by delaying notification of the Breach.

55.    As a result of its inadequate cybersecurity, Defendant exposed Plaintiff's Sensitive Information for theft by cybercriminals and sale on the dark web.

---

[7] Gordon M. Snow Statement, FBI https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector (last visited January 10, 2024).
[8] Secret Service Warn of Targeted, Law360, https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited January 10, 2024).
[9] Ransomware explained, CSO, https://www.csoonline.com/article/563507/what-is-ransomware-how-it-works-and-how-to-remove-it.html (last visited January 10, 2024);

56.    Plaintiff does not recall ever learning that her Sensitive Information was compromised in a data breach incident, other than the breach at issue in this case.

57.    As a result of the Data Breach notice, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

58.    Plaintiff has and will spend considerable time and effort monitoring her accounts to protect herself from additional identity theft. Plaintiff fears for her personal financial security and uncertainty over what Sensitive Information was exposed in the Data Breach.

59.    Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

60.    Plaintiff has suffered actual injury in the form of damages to and diminution in the value of their Sensitive Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

61.    Plaintiff suffered actual injury from the exposure of her Sensitive Information —which violates her rights to privacy.

62.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Sensitive Information being placed in the hands of unauthorized third parties and possibly criminals.

63.    Plaintiff has a continuing interest in ensuring that her Sensitive Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

*Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft*

64.    Plaintiff and members of the proposed Class have suffered injury from the misuse of their Sensitive Information that can be directly traced to Defendant.

65.    As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

    a.    The loss of the opportunity to control how their Sensitive Information is used;

    b.    The diminution in value of their Sensitive Information;

    c.    The compromise and continuing publication of their Sensitive Information;

    d.    Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

    e.    Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

    f.    Delay in receipt of tax refund monies;

    g.    Unauthorized use of stolen Sensitive Information; and

    h.    The continued risk to their Sensitive Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Sensitive Information in its possession.

66.    Stolen Sensitive Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.

67.     The value of Plaintiff's and the Class's Sensitive Information on the black market is considerable. Stolen Sensitive Information trades on the black market for years, and criminals frequently post stolen Sensitive Information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

68.     It can take victims years to spot identity theft, giving criminals plenty of time to use that information for cash.

69.     One such example of criminals using Sensitive Information for profit is the development of "Fullz" packages.

70.     Cyber-criminals can cross-reference two sources of Sensitive Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

71.     The development of "Fullz" packages means that stolen Sensitive Information from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Sensitive Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and the Class's stolen Sensitive Information is being misused, and that such misuse is fairly traceable to the Data Breach.

72.     Defendant disclosed the Sensitive Information of Plaintiff and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Sensitive Information of Plaintiff and the Class to people engaged

in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Sensitive Information.

73.    Defendant's failure to properly notify Plaintiff and members of the Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their Sensitive Information and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant failed to adhere to FTC guidelines.***

74.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Sensitive Information.

75.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

    a.  protect the sensitive consumer information that it keeps;

    b.  properly dispose of Sensitive Information that is no longer needed;

    c.  encrypt information stored on computer networks;

    d.  understand their network's vulnerabilities; and

    e.  implement policies to correct security problems.

76.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

77.    The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

78.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

79.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Violated HIPAA***

80.    HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information. [10]

81.    HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[11]

82.    The Data Breach itself resulted from a combination of inadequacies showing Defendant's failure to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

---

[10] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, inter alia: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.
[11] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

a. Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c. Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d. Failing to ensure compliance with HIPAA security standards by Defendant in violation of 45 C.F.R. § 164.306(a)(4);

e. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

      i.   Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

83. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

***Defendant Fails to Comply with Industry Standards***

84. As noted above, experts studying cyber security routinely identify entities in possession of PII and PHI as being particularly vulnerable to cyberattacks because of the value of the Sensitive Information which they collect and maintain.

85. Several best practices have been identified that a minimum should be implemented by employers in possession of PII and PHI, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these industry best practices, including a failure to implement multi-factor authentication.

86. Other best cybersecurity practices that are standard for employers include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

87. Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10,

PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

88.    These foregoing frameworks are existing and applicable industry standards for an employer's obligations to provide adequate data security for its employees. Upon information and belief, Defendant failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

## CLASS ACTION ALLEGATIONS

89.    Plaintiff is suing on behalf of herself and the proposed Class ("Class"), defined as follows:

> All US citizens whose Sensitive Information was compromised in the Data Breach discovered by Defendant in June 2024, including all those citizens who received notice of the breach.

90.    Excluded from the Class is Defendant, their agents, affiliates, parents, subsidiaries, any entity in which Defendant have a controlling interest, any of Defendant's officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

91.    Plaintiff reserves the right to amend the class definition.

a. **Numerosity**. Plaintiff is representative of the Class, consisting of several thousands of members, far too many to join in a single action;

b. **Ascertainability**. Members of the Class are readily identifiable from information in Defendant's possession, custody, and control;

c. **Typicality**. Plaintiff's claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

d. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's interests. Her interests do not conflict with the Class's interests, and she has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

e. **Commonality**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

   i. Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Sensitive Information;

   ii. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

   iii. Whether Defendant were negligent in maintaining, protecting, and securing Sensitive Information;

   iv. Whether Defendant breached contract promises to safeguard Plaintiff's and the Class's Sensitive Information;

   v. Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

   vi. Whether Defendant's Breach Notice was reasonable;

   vii. Whether the Data Breach caused Plaintiff's and the Class's injuries;

   viii. What the proper damages measure is; and

   ix. Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

92. Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

## COUNT I
### Negligence
### (On Behalf of Plaintiff and the Class)

93. Plaintiff realleges all previous paragraphs as if fully set forth below.

CLASS ACTION COMPLAINT – 20

94.     Plaintiff and members of the Class entrusted their Sensitive Information to Defendant. Defendant owed to Plaintiff and the Class a duty to exercise reasonable care in handling and using the Sensitive Information in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

95.     Defendant owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their Sensitive Information in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that Sensitive Information —just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and the Class's Sensitive Information by disclosing and providing access to this information to unauthorized third parties and by failing to properly supervise both the way the Sensitive Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

96.     Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their Sensitive Information. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and the Class to take appropriate measures to protect their Sensitive Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

97.     Defendant owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and the Class's Sensitive Information.

98.    The risk that unauthorized persons would attempt to gain access to the Sensitive Information and misuse it was foreseeable. Given that Defendant holds vast amounts of Sensitive Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Sensitive Information —whether by malware or otherwise.

99.    Sensitive Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Sensitive Information of Plaintiff and the Class and the importance of exercising reasonable care in handling it.

100.    Defendant breached its duties by failing to exercise reasonable care in supervising its employees, agents, contractors, vendors, and suppliers, and in handling and securing the Sensitive Information of Plaintiff and the Class which actually and proximately caused the Data Breach and Plaintiff's and the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

101.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Sensitive Information by criminals, improper disclosure of their Sensitive Information, lost benefit of their bargain, lost value of their Sensitive Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face. .

**COUNT II**
**Negligence *Per Se***
**(On Behalf of Plaintiff and the Class)**

102.    Plaintiff realleges all previous paragraphs as if fully set forth below.

103.    Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Sensitive Information.

104.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, patients' Sensitive Information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the members of the Class's Sensitive Information.

105.    Defendant breached its duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Sensitive Information.

106.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its patients, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach.

107.    Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

108.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Sensitive Information.

109.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and the Class's Sensitive Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

110.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

111.    Defendant violated its duty under HIPAA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed supra. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

112.    But for Defendant's wrongful and negligent breach of the duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

113.    The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and that its breach would cause Plaintiff and

members of the Class to suffer the foreseeable harms associated with the exposure of their Sensitive Information.

114.    Had Plaintiff and the Class known that Defendant did not adequately protect their Sensitive Information, Plaintiff and members of the Class would not have entrusted Defendant with their Sensitive Information.

115.    Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

116.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of Sensitive Information; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen Sensitive Information, entitling them to damages in an amount to be proven at trial.

117.    Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their Sensitive Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their Sensitive Information in its continued possession.

## COUNT III
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Class)

118.    Plaintiff realleges all previous paragraphs as if fully set forth below.

119.    Plaintiff and the Class delivered their Sensitive Information to Defendant as part of the process of obtaining treatment and services provided by Defendant.

120.    Plaintiff and Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect such information and to timely and

accurately notify Plaintiff and Class Members if and when their data had been breached and compromised. Each such contractual relationship imposed on Defendant an implied covenant of good faith and fair dealing by which Defendant was required to perform its obligations and manage Plaintiff's and Class Members' data in a manner which comported with the reasonable expectations of privacy and protection attendant to entrusting such data to Defendant.

121.    In providing their Sensitive Information, Plaintiff and Class Members entered into an implied contract with Defendant whereby Defendant, in receiving such data, became obligated to reasonably safeguard Plaintiff's and the other Class Members' Sensitive Information.

122.    In delivering their Sensitive Information to Defendant, Plaintiff and Class Members intended and understood that Defendant would adequately safeguard that data.

123.    Plaintiff and the Class Members would not have entrusted their Sensitive Information to Defendant in the absence of such an implied contract.

124.    Defendant accepted possession of Plaintiff's and Class Members' Sensitive Information.

125.    Had Defendant disclosed to Plaintiff and Class Members that Defendant did not have adequate computer systems and security practices to secure patients' Sensitive Information, Plaintiff and members of the Class would not have provided their Sensitive Information to Defendant.

126.    Defendant recognized that patients' Sensitive Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and Class Members.

127.    Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

128.    Defendant breached the implied contract with Plaintiff and Class Members by failing to take reasonable measures to safeguard its data.

129.    Defendant breached the implied contract with Plaintiff and Class Members by failing to promptly notify them of the access to and exfiltration of their Sensitive Information.

130.    As a direct and proximate result of the breach of the contractual duties, Plaintiff and Class Members have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiff and the Class Members include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of their Sensitive Information; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity; (d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their Sensitive Information; (g) the diminution in the value of the services bargained for as Plaintiff and Class Members were deprived of the data protection and security that Defendant promised when Plaintiff and the proposed class entrusted Defendant with their Sensitive Information; and (h) the continued and substantial risk to Plaintiff's and Class Members' Sensitive Information, which remains in the Defendant's possession with inadequate measures to protect Plaintiff's and Class Members' Sensitive Information.

**COUNT IV**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Class)**

131.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

132.    Under California law, every contract imposes on each party a duty of good faith and fair dealing in each performance and its enforcement. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the

1  parties to a contract are mutually obligated to comply with the substance of their contract in
2  addition to its form.

3      133.    Subterfuge and evasion violate the duty of good faith in performance even when
4  an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction.
5  And fair dealing may require more than honesty.

6      134.    Here, Plaintiff and Defendant entered into a contract (implied in law, fact, or
7  otherwise) whereby Defendant agreed to:

8          a.    use a portion of the funds paid by Plaintiff and Class Members to pay for
9                adequate cybersecurity measures;

10         b.    use adequate cybersecurity measures as required by state law, federal
11               law, and Defendant's contractual agreements (implied or otherwise); and
12         c.    notify them promptly of any exposure of their Sensitive Information.

13     135.    As current and former patients, Plaintiff and Class Members fully fulfilled their
14  contractual obligations.

15     136.    Furthermore, the conditions precedent (if any) to Defendant's performance have
16  already occurred.

17     137.    Defendant unfairly interfered with the Plaintiff's and Class Members' rights to
18  receive the benefits of the contract—and breached the covenant of good faith and fair
19  dealing—by, *inter alia*:

20         a.    failing to safeguard their information;
21         b.    failing to notify them promptly of the intrusion into its computer systems
22               that compromised such information.
23         c.    failing to comply with industry standards;
24         d.    failing to comply with its legal obligations; and
25         e.    failing to ensure the confidentiality and integrity of the electronic
26               Sensitive Information that Defendant created, received, maintained, and
27               transmitted.

28

CLASS ACTION COMPLAINT – 28

138.    Defendant's material breaches were the direct and proximate cause of Plaintiff's
and Class Members' injuries (as detailed *supra*).

## COUNT V
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

139.    Plaintiff realleges all previous paragraphs as if fully set forth below.

140.    This claim is pleaded in the alternative to the breach of implied contractual duty
claim.

141.    Plaintiff and members of the Class conferred a benefit upon Defendant in
providing Sensitive Information to Defendant.

142.    Defendant appreciated or had knowledge of the benefits conferred upon it by
Plaintiff and the Class. Defendant also benefited from the receipt of Plaintiff's and the Class's
Sensitive Information, as this was used to facilitate the treatment, services, and goods it sold
to Plaintiff and the Class.

143.    Under principles of equity and good conscience, Defendant should not be
permitted to retain the full value of Plaintiff and the Class's Sensitive Information because
Defendant failed to adequately protect their Sensitive Information. Plaintiff and the proposed
Class would not have provided their Sensitive Information to Defendant had they known
Defendant would not adequately protect their Sensitive Information.

144.    Defendant should be compelled to disgorge into a common fund for the benefit
of Plaintiff and members of the Class all unlawful or inequitable proceeds received by them
because of their misconduct and Data Breach.

## COUNT VI
**Invasion of Privacy**
**Cal. Const. ART. 1 § 1**
**(On Behalf of Plaintiff and the Class)**

145.    Plaintiff realleges all previous paragraphs as if fully set forth below.

146.    Plaintiff and Class Members had a reasonable expectation of privacy in their communications with Defendant via its communications platforms and services therein.

147.    Plaintiff and Class Members communicated Sensitive Information that they intended for only Defendant to receive and that they understood Defendant would keep private.

148.    Defendant's disclosure of the substance and nature of those communications to third parties without the knowledge and consent of Plaintiff and Class Members is an intentional intrusion on Plaintiff's and Class Members' solitude or seclusion and their private affairs and concerns.

149.    Plaintiff and Class Members had a reasonable expectation of privacy given Defendant's representations, Privacy Policies and HIPAA. Moreover, Plaintiff and Class Members have a general expectation that their communications regarding healthcare with their healthcare providers will be kept confidential. Defendant's disclosure of Plaintiff's and the Class's PHI coupled with Sensitive Information is highly offensive to the reasonable person.

150.    As a result of Defendant's actions, Plaintiff and Class Members have suffered harm and injury, including but not limited to invasion of their privacy rights, the unauthorized access of their Sensitive Information by third parties, improper disclosure of their Sensitive Information, lost benefit of their bargain, lost value of their Sensitive Information, and lost time and money incurred to mitigate and remediate the effects of use of their information that resulted from and were caused by Defendant's conduct. These injuries are ongoing, imminent, immediate, and continuing.

151.    Plaintiff and Class Members have been damaged as a direct and proximate result of Defendant's invasion of their privacy and are entitled to just compensation, including monetary damages.

152.    Plaintiff and Class Members seek appropriate relief for that injury, including but not limited to actual and compensatory damages, and all other relief they may be entitled to reasonably compensate Plaintiff and Class Members for the harm to their privacy interests as a result of its intrusions upon Plaintiff's and Class Members' privacy.

153.    Plaintiff also seek such other relief as the Court may deem just and proper.

**COUNT VII**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of Plaintiff and the Class)**

154.    Plaintiff realleges all previous paragraphs as if fully set forth below.

155.    Defendant engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.* which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

156.    Defendant's conduct is unlawful because it violates the California Consumer Privacy Act of 2018, Civ. Code § 1798.100, et seq. (the "CCPA"), and other state data security laws.

157.    Defendant stored the Sensitive Information of Plaintiff and the Class in its computer systems and knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with applicable regulations and that would have kept Plaintiff's and the Class's Sensitive Information secure so as to prevent the loss or misuse of that Sensitive Information.

158.    Defendant failed to disclose to Plaintiff and the Class that their Sensitive Information was not secure. However, Plaintiff and the Class were entitled to assume, and did assume, that Defendant had secured their Sensitive Information. At no time were Plaintiff and the Class on notice that their Sensitive Information was not secure, which Defendant had a duty to disclose.

159.    Defendant also violated California Civil Code § 1798.150 by failing to implement and maintain reasonable security procedures and practices, resulting in an unauthorized access and exfiltration, theft, or disclosure of Plaintiff's and the Class's nonencrypted and nonredacted Sensitive Information.

160.    Had Defendant complied with these requirements, Plaintiff and the Class would not have suffered the damages related to the data breach.

1      161.    Defendant's conduct was unlawful, in that it violated the CCPA.

2      162.    Defendant's acts, omissions, and misrepresentations as alleged herein were

3  unlawful and in violation of, inter alia, Section 5(a) of the Federal Trade Commission Act.

4      163.    Defendant's conduct was also unfair, in that it violated a clear legislative policy

5  in favor of protecting consumers from data breaches.

6      164.    Defendant's conduct is an unfair business practice under the UCL because it

7  was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. This

8  conduct includes employing unreasonable and inadequate data security despite its business

9  model of actively collecting Sensitive Information.

10     165.    Defendant also engaged in unfair business practices under the "tethering test."

11 Its actions and omissions, as described above, violated fundamental public policies expressed

12 by the California Legislature. See, e.g., Cal. Civ. Code § 1798.1 ("The Legislature declares

13 that . . . all individuals have a right of privacy in information pertaining to them . . . The

14 increasing use of computers . . . has greatly magnified the potential risk to individual privacy

15 that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a)

16 ("It is the intent of the Legislature to ensure that personal information about California

17 residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature

18 that this chapter [including the Online Privacy Protection Act] is a matter of statewide

19 concern."). Defendant's acts and omissions thus amount to a violation of the law.

20     166.    Instead, Defendant made the Sensitive Information of Plaintiff and the Class

21 accessible to scammers, identity thieves, and other malicious actors, subjecting Plaintiff and

22 the Class to an impending risk of identity theft. Additionally, Defendant's conduct was unfair

23 under the UCL because it violated the policies underlying the laws set out in the prior

24 paragraph.

25     167.    As a result of those unlawful and unfair business practices, Plaintiff and the

26 Class suffered an injury-in-fact and have lost money or property.

27

28

168.    The injuries to Plaintiff and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

169.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misconduct alleged in this complaint.

170.    Therefore, Plaintiff and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant because of its unfair and improper business practices; a permanent injunction enjoining Defendant's unlawful and unfair business activities; and any other equitable relief the Court deems proper.

## COUNT VIII
**Violation of the California Consumer Privacy Act**
**Cal. Civ. Code § 1798.150**
**(On Behalf of Plaintiff and the Class)**

171.    Plaintiff realleges all previous paragraphs as if fully set forth below.

172.    Defendant violated California Civil Code § 1798.150 of the CCPA by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the nonencrypted Sensitive Information of Plaintiff and the Class. As a direct and proximate result, Plaintiff's, and the Class's nonencrypted and nonredacted Sensitive Information was subject to unauthorized access and exfiltration, theft, or disclosure.

173.    Defendant is a business organized for the profit and financial benefit of its owners according to California Civil Code § 1798.140, that collects the personal information of its customers, and whose annual gross revenues exceed the threshold established by California Civil Code § 1798.140(d).

174.    Plaintiff and Class Members seek injunctive or other equitable relief to ensure Defendant hereinafter adequately safeguards Sensitive Information by implementing reasonable security procedures and practices. Such relief is particularly important because Defendant continues to hold Sensitive Information, including Plaintiff's and Class members'

Sensitive Information. Plaintiff and Class members have an interest in ensuring that their Sensitive Information is reasonably protected, and Defendant has demonstrated a pattern of failing to adequately safeguard this information.

175.     Pursuant to California Civil Code § 1798.150(b), Plaintiff mailed a CCPA notice letter to Defendant's registered service agents, detailing the specific provisions of the CCPA that Defendant has violated and continues to violate. If Defendant cannot cure within 30 days— and Plaintiff believes such cure is not possible under these facts and circumstances—then Plaintiff intends to promptly amend this Complaint to seek statutory damages as permitted by the CCPA.

176.     As described herein, an actual controversy has arisen and now exists as to whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of the information so as to protect the personal information under the CCPA.

177.     A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendant.

**COUNT IX**
**Violation of the California Customer Records Act**
**Cal. Civ. Code § 1798.80, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

178.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

179.     Under the California Customer Records Act, any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" must "disclose any breach of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82. The disclosure must "be made in the most expedient time possible and

without unreasonable delay" but disclosure must occur "immediately following discovery [of the breach], if the personal information was, *or* is reasonably believed to have been, acquired by an unauthorized person." *Id* (emphasis added).

180.    The Data Breach constitutes a "breach of the security system" of Defendant.

181.    An unauthorized person acquired the personal, unencrypted information of Plaintiff and the Class.

182.    Defendant knew that an unauthorized person had acquired the personal, unencrypted information of Plaintiff and the Class but waited approximately two months to notify them. Given the severity of the Data Breach, two months was an unreasonable delay.

183.    Defendant's unreasonable delay prevented Plaintiff and the Class from taking appropriate measures from protecting themselves against harm.

184.    Because Plaintiff and the Class were unable to protect themselves, they suffered incrementally increased damages that they would not have suffered with timelier notice.

185.    Plaintiff and the Class are entitled to equitable relief and damages in an amount to be determined at trial.

<u>COUNT X</u>
**Violation of the California Confidentiality of Medical Information Act**
**Cal. Civ. Code § 56, *et seq.***
**(On Behalf of Plaintiff and the Class)**

186.    Plaintiff realleges all previous paragraphs as if fully set forth below.

187.    Defendant is "a provider of health care," as defined in Cal. Civ. Code §56.05(m) and is therefore subject to the requirements of the CMIA, Cal. Civ. Code §56.10(a), (d) and (e), 56.36(b), 56.101(a) and (b).

188.    At all relevant times, Defendant was a health care provider because they had the "purpose of maintaining medical information to make the information available to the

individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manager his or her information, or for the diagnosis or treatment of the individual."

189.    As a provider of health care or a contractor, Defendant is required by the CMIA to ensure that medical information regarding patients is not disclosed or disseminated and/or released without patient's authorization, and to protect and preserve the confidentiality of the medical information regarding a patient, under Civil Code §§ 56.06, 56.10, 56.13, 56.20, 56.245, 56.26, 56.35, 56.36, and 56.101.

190.    As a provider of health care or a contractor, Defendant is required by the CMIA not to disclose medical information regarding a patient without first obtaining an authorization under Civil Code §§ 56.06, 56.10, 56.13, 56.20, 56.245, 56.26, 56.35, and 56.104.

191.    Defendant is a person/entity licensed under California under California's Business and Professions Code, Division 2. See Cal. Bus. Prof. Code § 4000, *et seq*.

192.    Plaintiff and Class Members are "patients" as defined in CMIA, Cal. Civ. Code §56.05(k) ("'Patient' means any natural person, whether or not still living, who received health care services from a provider of health care and to whom medical information pertains."). Furthermore, Plaintiff and Class Members, as patients and customers of Defendant, had their individually identifiable "medical information," within the meaning of Civil Code § 56.05(j), created, maintained, preserved, and stored on Defendant's computer network, and were patients on or before the date of the Data Breach.

193.    Defendant disclosed "medical information," as defined in CMIA, Cal. Civ. Code § 56.05(j), to unauthorized persons without first obtaining consent, in violation of Cal. Civ. Code § 56.10(a). The disclosure of information to unauthorized individuals in the Data Breach resulted from the affirmative actions of Defendant's employees, which allowed the hackers to see and obtain Plaintiff's and Class Members' medical and Sensitive Information.

194.    Defendant negligently created, maintained, preserved, stored, and then exposed Plaintiff's and Class Members' individually identifiable "medical information," within the

meaning of Cal. Civ. Code § 56.05(j), including Plaintiff's and California Class members' names, addresses, medical information, and health insurance information, that alone or in combination with other publicly available information, reveals their identities. Specifically, Defendant knowingly allowed and affirmatively acted in a manner that allowed unauthorized parties to access, exfiltrate, and actually view Plaintiff's and Class Members' confidential Sensitive Information.

195. Defendant's negligence resulted in the release of individually identifiable medical information pertaining to Plaintiff and Class Members to unauthorized persons and the breach of the confidentiality of that information. Defendant's negligent failure to maintain, preserve, store, abandon, destroy, and/or dispose of Plaintiff's and Class Members' medical information in a manner that preserved the confidentiality of the information contained therein, in violation of Cal. Civ. Code §§ 56.06 and 56.101(a).

196. Defendant also violated Sections 56.06 and 56.101 of the CMIA, which prohibit the negligent creation, maintenance, preservation, storage, abandonment, destruction, or disposal of confidential personal medical information.

197. Plaintiff's and Class Members' medical information was accessed and actually viewed by hackers in the Data Breach.

198. Plaintiff's and Class Members' medical information that was the subject of the Data Breach included "electronic medical records" or "electronic health records" as referenced by Civil Code § 56.101(c) and defined by 42 U.S.C. § 17921(5).

199. Defendant's computer systems did not protect and preserve the integrity of electronic medical information in violation of Cal. Civ. Code § 56.101(b)(1)(A). As a direct and proximate result of Defendant's above-noted wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, and violation of the CMIA, Plaintiff and the Class Members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, inter alia:

      a.  present, imminent, immediate and continuing increased risk of identity theft, identity fraud and medical fraud –risks justifying expenditures for protective and remedial services for which they are entitled to compensation;

      b.  invasion of privacy;

      c.  breach of the confidentiality of the PHI;

      d.  statutory damages under the California CMIA;

      e.  deprivation of the value of their PHI, for which there is well-established national and international markets; and/or,

      f.  the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages.

200.    As a direct and proximate result of Defendant's wrongful actions, inaction, omission, and want of ordinary care that directly and proximately caused the release of Plaintiff's and Class Members' Sensitive Information, Plaintiff and Class Members' personal medical information was viewed by, released to, and disclosed to third parties without Plaintiff's and Class Members' written authorization.

201.    Defendant's negligent failure to maintain, preserve, store, abandon, destroy, and/or dispose of Plaintiff's and Class Members' medical information in a manner that preserved the confidentiality of the information contained therein violated the CMIA.

202.    Plaintiff and the Class Members were injured and have suffered damages, as described above, from Defendant's illegal and unauthorized disclosure and negligent release of their medical information in violation of Cal. Civ. Code §§56.10 and 56.101, and therefore seek relief under Civ. Code §§ 56.35 and 56.36, which allows for actual damages, nominal statutory damages of $1,000, punitive damages of $3,000, injunctive relief, and attorneys' fees, expenses and costs.

**PRAYER FOR RELIEF**

Plaintiff and the Class demand a jury trial on all claims so triable and request that the Court enter an order:

    A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing her counsel to represent the Class;

    B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

    C. Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

    D. Enjoining Defendant from further deceptive practices and making untrue statements Plaintiff the Data Breach and the stolen Sensitive Information;

    E. Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

    F. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

    G. Awarding attorneys' fees and costs, as allowed by law;

    H. Awarding prejudgment and post-judgment interest, as provided by law;

    I. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

    J. Granting such other or further relief as may be appropriate under the circumstances.

1

## **JURY DEMAND**

2
     Plaintiff hereby demands that this matter be tried before a jury.

3

4
Dated: March 12, 2025            Respectfully submitted,

5

6
        By:  */s/ Andrew G. Gunem*

7
              Andrew G. Gunem (SBN 354042)
              **STRAUSS BORRELLI PLLC**

8
              One Magnificent Mile
              980 N Michigan Avenue, Suite 1610

9
              Chicago IL, 60611
              Telephone: (872) 263-1100

10
              Facsimile: (872) 263-1109
              agunem@straussborrelli.com

11

12
              *Attorney for Plaintiff and Proposed Class*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

— **EXHIBIT  A** —

Jaime S. Schwartz MD, PC
c/o Cyberscout
PO Box 1286
Dearborn, MI 48120-9998

**Via First-Class Mail**
P
▮▮▮▮▮▮▮▮▮▮▮



January 15, 2025

<u>Notice of Data Breach</u>

Dear ▮▮▮▮▮▮▮▮▮,

We are writing to inform you of an incident that may have exposed your personal information. Please read this letter carefully as it contains details about the incident and resources you can utilize to protect your information, including instructions for enrolling in complimentary credit monitoring and identity theft protection services.

<u>What Happened:</u>

Our office discovered on June 27, 2024, that an unauthorized third party utilized a third-party vendor's credentials to access the practice's medical billing and practice management system. Upon discovering the incident, we engaged a specialized third-party forensic incident response firm to conduct a forensic investigation and determine the extent of the compromise. The investigation determined that data was acquired without authorization. After electronic discovery, which concluded on January 2, 2025, it was determined that some of your personal information was present in the impacted data set. We then took steps to notify you of the incident as quickly as possible.

<u>What Information Was Involved:</u>

Again, we found no evidence that your information has been misused. However, it is possible that the following personal information could have been acquired by an unauthorized third party: first name, last name, address, date of birth, medical information, prescription medications, patient images, and health insurance information. **Notably, the types of information affected were different for each individual, and not every individual had all the above listed elements exposed. Please rest assured that your Social Security number and financial information was not impacted in this incident.**

<u>What We Are Doing:</u>

Data security is among our highest priorities, and we are committed to doing everything we can to protect the privacy and security of the personal information in our care. Upon detecting this incident, we moved quickly to initiate a response, which included conducting an investigation with the assistance of IT specialists and confirming the security of our network environment. As a result of this incident, we are reviewing technical safeguards and looking into enhancements to prevent a similar incident.

Additionally, **although we have no indication at this time of any misuse of your information**, we are providing you with access to **Single Bureau Credit Monitoring/Single Bureau Credit Report/Single Bureau Credit Score** services at no charge. These services provide you with alerts for twelve (12) months from the date of enrollment when changes occur to your credit file.  This notification is sent to you the same day that the change or update takes place with the bureau. Finally, we are providing you with proactive fraud assistance to help with any questions that you might have or in event that you become a victim of fraud. These services will be provided by Cyberscout, a TransUnion company specializing in fraud assistance and remediation services.

What You Can Do:

To enroll in Credit Monitoring services at no charge, please log on to https://bfs.cyberscout.com/activate and follow the instructions provided. When prompted please provide the following unique code to receive services: ▮▮▮▮▮▮▮. In order for you to receive the monitoring services described above, you must enroll within 90 days from the date of this letter.  The enrollment requires an internet connection and e-mail account and may not be available to minors under the age of 18 years of age.  Please note that when signing up for monitoring services, you may be asked to verify personal information for your own protection to confirm your identity.

For More Information:

We encourage you to take full advantage of these services. Enclosed you will find additional materials regarding the resources available to you, and the steps you can take to further protect your personal information.

Representatives are aware of the incident and can answer questions or concerns you may have regarding protection of your personal information. Please call at **833-799-4269**, Monday through Friday, excluding holidays from 8:00 am - 8:00 pm Eastern Time for assistance or for any additional questions you may have.

Please be assured that we take the privacy and security of all personal information within its possession very seriously. We hope you will accept our sincere apologies and know that Dr. Schwartz deeply regrets any worry or inconvenience that this may cause you.

Sincerely,

Jaime S. Schwartz MD, PC

## Additional Information

**Credit Reports**: You may obtain a copy of your credit report, free of charge, whether or not you suspect any unauthorized activity on your account. You may obtain a free copy of your credit report from each of the three nationwide credit reporting agencies. To order your free credit report, please visit www.annualcreditreport.com, or call toll-free at 1-877-322-8228. You can also order your annual free credit report by mailing a completed Annual Credit Report Request Form (available at https://www.consumer.ftc.gov/articles/0155-free-credit-reports) to: Annual Credit Report Request Service, P.O. Box 105281, Atlanta, GA, 30348-5281.

**Security Freeze:** You also have the right to place a security freeze on your credit report. A security freeze is intended to prevent credit, loans, and services from being approved in your name without your consent. To place a security freeze on your credit report, you need to make a request to each consumer reporting agency. You may make that request by certified mail, overnight mail, regular stamped mail, or by following the instructions found at the websites listed below. The following information must be included when requesting a security freeze (note that if you are requesting a credit report for your spouse or a minor under the age of 16, this information must be provided for him/her as well): (1) full name, with middle initial and any suffixes; (2) Social Security number;
(3) date of birth; (4) current address and any previous addresses for the past five years; and (5) any applicable incident report or complaint with a law enforcement agency or the Registry of Motor Vehicles.

The request must also include a copy of a government-issued identification card and a copy of a recent utility bill or bank or insurance statement. It is essential that each copy be legible, display your name and current mailing address, and the date of issue. As of September 21, 2018, it is free to place, lift, or remove a security freeze. You may also place a security freeze for children under the age of 16. You may obtain a free security freeze by contacting any one or more of the following national consumer reporting agencies:

| Equifax Security Freeze | Experian Security Freeze | TransUnion Security Freeze |
|---|---|---|
| P.O. Box 105788 | P.O. Box 9554 | P.O. Box 160 |
| Atlanta, GA 30348 | Allen, TX 75013 | Woodlyn, PA 19094 |
| 1-888-298-0045 | 1-888-397-3742 | 1-800-916-8800 |
| https://www.equifax.com/personal/credit-report-services/credit-freeze/ | www.experian.com/freeze/center.html | www.transunion.com/credit-freeze |

**Fraud Alerts:** You can place fraud alerts with the three credit bureaus by phone and online with:
- Equifax (https://assets.equifax.com/assets/personal/Fraud_Alert_Request_Form.pdf);
- TransUnion (https://www.transunion.com/fraud-alerts); or
- Experian (https://www.experian.com/fraud/center.html).

A fraud alert tells creditors to follow certain procedures, including contacting you, before they open any new accounts or change your existing accounts. For that reason, placing a fraud alert can protect you, but also may delay you when you seek to obtain credit. As of September 21, 2018, initial fraud alerts last for one year. Victims of identity theft can also get an extended fraud alert for seven years. The phone numbers for all three credit bureaus are listed above.

**Monitoring:** You should always remain vigilant and monitor your accounts for suspicious or unusual activity.

**File Police Report**: You have the right to file or obtain a police report if you experience identity fraud. Please note that in order to file a crime report or incident report with law enforcement for identity theft, you will likely need to provide proof that you have been a victim. A police report is often required to dispute fraudulent items. You can generally report suspected incidents of identity theft to local law enforcement or to the Attorney General.

**FTC and Attorneys General:** You can further educate yourself regarding identity theft, fraud alerts, security freezes, and the steps you can take to protect yourself, by contacting the consumer reporting agencies, the Federal Trade Commission, or your state Attorney General. The Federal Trade Commission can be reached at: 600 Pennsylvania Avenue NW, Washington, DC 20580, www.identitytheft.gov, 1-877-ID-THEFT (1-877-438-4338), TTY: 1-866-653-4261. The Federal Trade Commission also encourages those who discover that their information has been misused to file a complaint with them.

You can obtain further information on how to file such a complaint by way of the contact information listed above. You have the right to file a police report if you ever experience identity theft or fraud. Please note that in order to file a report with law enforcement for identity theft, you will likely need to provide some proof that you have been a victim. Instances of known or suspected identity theft should also be reported to law enforcement. This notice has not been delayed by law enforcement.

**For Arizona residents,** the Attorney General may be contacted at the Consumer Protection & Advocacy Section, 2005 North Central Avenue, Phoenix, AZ 85004, 1-602-542-5025.

**For Colorado residents,** the Attorney General may be contacted through Consumer Protection 1300 Broadway, 9th Floor, Denver, CO 80203 1-720-508-6000, www.coag.gov.

**For District of Columbia residents**, the District of Columbia Attorney General may be contacted at: 400 6th Street, NW, Washington, D.C. 20001; 202-727-3400; and oag.dc.gov.

**For Illinois residents**, the Attorney General can be contacted at 100 West Randolph Street, Chicago, IL 60601; 1-866-999-5630; www.illinoisattorneygeneral.gov.

**For Iowa residents,** you can report any suspected identity theft to law enforcement or to the Attorney General.

**For Massachusetts residents,** it is required by state law that you are informed of your right to obtain a police report filed in regard to this incident. If you are the victim of identity theft, you also have the right to file a police report and obtain a copy of it.

**For Maryland residents**, the Maryland Attorney General can be contacted at 200 St. Paul Place, 16th Floor, Baltimore, MD 21202, 1-888-743-0023, and www.oag.state.md.us.

**For New Mexico residents,** you have rights pursuant to the Fair Credit Reporting Act, such as the right to be told if information in your credit file has been used against you, the right to know what is in your credit file, the right to ask for your credit score, and the right to dispute incomplete or inaccurate information. Further, pursuant to the Fair Credit Reporting Act, the consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information; consumer reporting agencies may not report outdated negative information; access to your file is limited; you must give your consent for credit reports to be provided to employers; you may limit "prescreened" offers of credit and insurance you get based on information in your credit report; and you may seek damages from violators. You may have additional rights under the Fair Credit Reporting Act not summarized here. Identity theft victims and active-duty military personnel have specific additional rights pursuant to the Fair Credit Reporting Act. We encourage you to review your rights pursuant to the Fair Credit Reporting Act by visiting www.consumerfinance.gov/f/201504_cfpb_summary_your-rights-under-fcra.pdf or by writing Consumer Response Center, Room 130-A, Federal Trade Commission, 600 Pennsylvania Ave. N.W., Washington, D.C. 20580.

**For New York residents**, the Attorney General may be contacted at Office of the Attorney General, The Capitol, Albany, NY 12224-0341, 1-800-771-7755, and https://ag.ny.gov/.

**For North Carolina residents**, the Attorney General can be contacted at 9001 Mail Service Center, Raleigh, NC 27699-9001, 1-877-566-7226 or 1-919-716-6400, and www.ncdoj.gov.

**For Rhode Island residents**, the Rhode Island Attorney General can be reached at 150 South Main Street, Providence, Rhode Island 02903, www.riag.ri.gov, and 1-401-274-4400. Under Rhode Island law, you have the right to obtain any police report filed regarding this incident. There are approximately <<#>> Rhode Island residents that may be impacted by this event.

**For Vermont Residents:** If you do not have internet access but would like to learn more about how to place a security freeze on your credit report, contact the Vermont Attorney General's Office at 802-656-3183 (800-649-2424 toll free in Vermont only).



After printing this label:
**CONSIGNEE COPY - PLEASE PLACE IN FRONT OF POUCH**
1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

~~16516 - 526~~

58894 - 01
Doe et al v. Jaime S. Schwartz
MD, PC
Michael Grimaldi    Bradley Bartolomeo